UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 21-cv-01148-JRT-JFD

CONTRERAS & METELSKA, P.A.,

                    Plaintiff,

        v.

U.S. IMMIGRATION & CUSTOMS
ENFORCEMENT AND U.S.
DEPARTMENT OF HOMELAND
SECURITY,

                    Defendants.

**MEMORANDUM IN SUPPORT
OF U.S. ICE AND DHS'S
MOTION FOR SUMMARY
JUDGMENT**

The Defendants, United States Immigration and Customs Enforcement (ICE) and the Department of Homeland Security (DHS) (collectively the United States), hereby submit this Memorandum in Support of their Motion for Summary Judgment. The United States is entitled to summary judgment in this case under the Freedom of Information Act, 5 U.S.C. § 552, because it disclosed all non-exempt material that was responsive to Contreras and Metelska P.A.'s (Contreras) request. The dispute here arises from Contreras' submission of a 13-page FOIA request asking ICE to search 5 years of emails from the account of Jim Stolley, ICE Chief Counsel, Office of the Principal Legal Advisor. The request identified nearly one hundred search terms focusing on itself and attorneys within the firm. Not surprisingly, many of the responsive documents reflect attorney work and advice that are protected under various privileges and are therefore exempt from disclosure under FOIA. Contreras has refused to acknowledge the unique sensitivity of a request aimed at a supervisory attorney, who is opposing counsel on many of Contreras's

1

cases, and generally disputes all of ICE's redactions.

The United States properly withheld documents under the attorney work product doctrine, deliberative process privilege, and attorney-client privilege. These materials are subject to the highest levels of protection under both common law privileges and under FOIA, 552 U.S.C § 552(b)(5). Likewise, the United States properly redacted private information of third parties and non-supervisory employees from its disclosures. 5 U.S.C. §§ 552(b)(6), 552(b)(7)(C). ICE is a law enforcement agency and there is a significant volume of private information on individuals contained within the email of Mr. Stolley, including individuals in removal proceedings and seeking relief from removal. The privacy interest these individuals have in not being identified publicly is paramount, and the Contreras has no good reason to overcome that protection. Finally, a small number of emails were withheld under Exemption 3 because the disclosure is prohibited by a specific statute. Contreras and the United States agreed to submit these emails to the Court for in camera review to determine the applicability of the statute.

The United States has produced a detailed Vaughn Index to outline the basis for its withholding. No material fact dispute exists as to those withholdings, and the United States respectfully requests that this Court grant the motion and issue judgment in favor of the United States.

## STATEMENT OF MATERIAL, UNDISPUTED FACTS

### I.      Background on ICE

ICE is the principal investigative arm of DHS and the second largest investigative agency in the Federal government. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now has more than 20,000 employees and offices in all 50 states and 48 foreign countries.  Pineiro Decl. ¶ 12.

ICE's Office of the Principal Legal Advisor ("OPLA") is the largest legal program in DHS, with over 1,250 attorneys and 290 support personnel. By statute, OPLA serves as the exclusive representative of DHS in immigration removal proceedings before the Department of Justice (DOJ), Executive Office for Immigration Review (EOIR), litigating all removal cases including those against criminal aliens, terrorists, and human rights abusers.  In addition to OPLA Headquarters in Washington D.C., there are twenty-five (25) OPLA field locations, called Offices of Chief Counsel (OCC). https://www.ice.gov/doclib/about/offices/opla/oplaMap.pdf (last visited Apr. 19, 2023). Each of these field locations is headed by the principal managing attorney, carrying the title of the Chief Counsel. Mr. Jim Stolley is the Chief Counsel of ICE OCC located in St. Paul, Minnesota (referred to hereafter as OCC St. Paul).  Pineiro Decl. ¶ 13.

ICE OPLA also provides a full range of legal services to ICE programs and offices. OPLA's clients include ICE Enforcement and Removal Operations (ERO) and ICE Homeland Security Investigations (HSI), among others. HSI and ERO are organized by

Areas of Responsibility (AORs) that revolve geographically around the OCCs. Therefore, OCC St. Paul provides legal counsel and advice to HSI and ERO officers in the general St. Paul AOR.  Pineiro Decl. ¶ 14.

OPLA further provides legal advice and prudential counsel to ICE personnel on their customs, criminal, and immigration law enforcement authorities, the FOIA and Privacy Act, ethics, legal liability under the Federal Tort Claims Act, and a range of administrative law issues, such as contract, fiscal, and employment law. OPLA represents the agency before the Merit Systems Protection Board, the Equal Employment Opportunity Commission, and the Board of Contract Appeals. OPLA attorneys provide essential support to the DOJ in the prosecution of ICE cases and in the defense of ICE's authorities in federal court.  Pineiro Decl. ¶ 15.

## II.    Plaintiff's FOIA Request & Procedural History

On March 22, 2021, ICE FOIA received the electronic submission of the Plaintiff's FOIA request, seeking various categories of emails sent or received by Jim Stolley, the current Chief Counsel of ICE's OCC St. Paul, from January 1, 2016, through the date the search was conducted. The FOIA request further specified a list of search terms to be utilized when conducting the searches.  Pineiro Decl. ¶ 6, Ex. B.

Plaintiff's FOIA request was put into the queue of incoming FOIA requests on March 22, 2021.  ICE had a significant backlog of requests at that time and did not acknowledge Plaintiff's request or assign a request number within the statutory timeframes.

Pineiro Decl. ¶ 7.  On May 4, 2021, Plaintiff filed its Complaint in this Court, seeking declaratory, injunctive, and other appropriate relief.  ECF 1.

After Plaintiff filed this suit, ICE and the Plaintiff negotiated the scope of the search to be conducted as well as search terms to be used.  The parties agreed that ICE would initially conduct the search of the email inbox of Mr. Stolley for records responsive to section 5 of the FOIA request, using the agreed-upon search terms, and then confer again with the Plaintiff after ICE provided the result of those searches to the Plaintiff.  Pineiro Decl. ¶ 9.  ICE completed the production of records responsive to section 5 of the FOIA request in March 2022.  Pineiro Decl. ¶ 10.

Through subsequent negotiations, ICE agreed to conduct another, limited search of Mr. Stolley's emails in return for Plaintiff agreeing not to challenge the adequacy of ICE's search. The results of that limited search were provided to the Plaintiff in July 2022. Pineiro Decl. ¶ 10.  Ultimately, ICE released the records responsive to the Plaintiff's FOIA request, originated by ICE's Office of the Principal Legal Advisor (OPLA), totaling two thousand four hundred thirty-six (2436) pages, over the course of seven interim releases between October 2021 and July 2022. These pages were marked with bates page numbers 2021-ICLI-00043 0001 to 2021-ICLI-00043 2436.  Pineiro Decl. ¶ 11.

All of these 2,436 documents come from the email inbox of Mr. Stolley. The responsive records are generally comprised of three categories of email communications: (1) communications internal to ICE amongst the employees of ICE OPLA, of which St. Paul OCC is a part, and between ICE OPLA and their clients, ICE ERO as well as HSI; (2) communications external to ICE between ICE OPLA and other federal agencies, including

DOJ's Office of Immigration Litigation (OIL), the U.S. Attorney's Office (USAO) and EOIR in connection with ongoing federal immigration cases in which ICE is either a party or holds a significant equity; (3) communications external to ICE between ICE and employees of the Contreras & Metelska, P.A., immigration law firm, which is also the Plaintiff in this case, as well as other third party private immigration counsel. A significant number of various email chains are largely repetitive of each other, with only slight variations. Pineiro Decl. ¶ 19.

Within these records, ICE generally applied Exemption 6 and 7(c) to withhold the names, email addresses and phone numbers of ICE and DOJ attorneys, ERO and HSI officers and personally identifying information (PII) of other third parties, which largely include noncitizen clients of the Contreras & Metelska law firm and/or attorneys within that law firm that did not provide a signed privacy waiver as to their PII.  Information pertaining to protected individuals on seven pages was withheld pursuant to Exemption 3 because a statute the agency is unable to identify for confidentiality reasons explicitly prohibits the disclosure of any information pertaining to the protected individual, except pursuant to exceptions not applicable here. Further, Exemption 5 was applied to withhold deliberative, attorney work-product and attorney-client privileged information in three categories of records: (1) communications amongst ICE OPLA attorneys; (2) communications between ICE OPLA and DOJ attorneys; and (3) communications between ICE OPLA attorneys and their clients within ERO and HSI. Pineiro Decl. ¶ 20.

After the production was complete, Contreras filed an Amended Complaint.  ECF 27.  In the Amended Complaint, Plaintiff generally objected to the United States'

6

withholdings.   Plaintiff also provided a preliminary listing of specific objections to redactions, in table format. ECF 27-4.   Counsel continued to negotiate and resolve some objections, either through additional disclosures by ICE or agreements by Contreras' counsel to rescind objections.   Pursuant to the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), ICE prepared a *Vaughn* index providing a description of each redaction and correlating each redaction to the corresponding exemption being applied.   Pineiro Decl. ¶ 16, Ex. A ("Vaughn Index").   Mr. Pineiro's declaration describes in great detail the careful formatting of the Vaughn Index.   Pineiro Decl. ¶¶ 17-18. In addition to the full Vaughn Index, which is over 200 pages, a streamlined table combining the United States' Vaughn Index entries with the objections identified in the Amended Complaint, ECF 27-4, is attached to the Declaration of Ana H. Voss as Exhibit C.

## ARGUMENT

### I.   Legal Standard

FOIA cases are most often properly resolved on summary judgment.   *See Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011); *Nielsen v. U.S. Bureau of Land Mgmt.*, 252 F.R.D. 499, 503 (D. Minn. 2008).   The Eighth Circuit has a well-developed framework to guide a court's consideration of a motion for summary judgment in a FOIA case:

> [The court reviews] whether the record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   "Summary judgment is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester."   *Miller v.*

*United States Dep't of State*, 779 F.2d 1378, 1382 (8th Cir.1985).  To defeat
a motion for summary judgment, the nonmoving party "need only present
evidence from which a jury might return a verdict in his favor."  *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

*Miller v. USDA*, 13 F.3d 260, 262 (8th Cir. 1993) (parallel citations omitted).  Defendants

bear the burden to prove that the withheld documents properly fall within an exemption.

*See Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755

(1989); *see also* 5 U.S.C. § 552(a)(4)(B) ("[T]he court shall determine the matter de novo"

and "the burden is on the agency to sustain its action.").

> A court's primary role . . . is to review the adequacy of the affidavits and
> other evidence presented by the Government in support of its position . . . .
> If the Government fairly describes the content of the material withheld and
> adequately states its ground for nondisclosure, and if these grounds are
> reasonable and consistent with the applicable law, the district court should
> uphold the Government's position.  The court is entitled to accept the
> credibility of the affidavits, so long as it has no reason to question the good
> faith of the agency.

*Barney v. IRS*, 618 F.2d 1268, 1272 (8th Cir. 1980) (citing *Cox v. DOJ*, 576 F.2d 1302,

1312 (8th Cir. 1978)).  The United States more than satisfied its burden in this case, with

its extensive and detailed Vaughn Index.  This Court should grant its motion.

## II.   The United States properly withheld information under Exemption 5 because it is protected by the attorney work product doctrine, deliberative process privilege and attorney-client communication privilege.

ICE redacted information that is privileged attorney work product, deliberative

process material and/or attorney-client privileged communication.  Pineiro Decl. ¶¶ 24-25.

Exemption 5 applies to:

> inter-agency or intra-agency memorandums or letters that would not be
> available by law to a party other than an agency in litigation with the agency,

8

> provided that the deliberative process privilege shall not apply to records
> created 25 years or more before the date on which the records were requested

5 U.S.C. § 552(b)(5).  The primary purpose of Exemption 5 was to enable the Government

to benefit from "frank discussion of legal or policy matters." S.Rep. No. 813, 89th Cong.,

1st Sess., 9 (1965); *See* H.R.Rep. No. 1497, 89th Cong., 2d Sess., 10 (1966), U.S. Code

Cong. & Admin. News 1966, p. 2418.  Exemption 5 incorporates all privileges applicable

to civil litigation.  *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 800 (1984).  FOIA

does not, however, apply the privileges in exactly the same way they would be applied in

civil litigation between two parties in discovery.  The test for determining whether

Exemption 5 protects attorney work product from disclosure in FOIA is whether the

documents would "routinely" or "normally" be disclosed upon a showing of relevance.

*F.T.C. v. Grolier Inc.*, 462 U.S. 19, 23 (1983) (citing *NLRB v. Sears, Roebuck,* 421 U.S.

132, 148-149 (1975)).

FOIA's Exemption 5 is, therefore, broader than the qualified privileges for material

in civil litigation between adversary parties.  In civil litigation, attorney work product is

generally <u>not</u> subject to disclosure.  Fed. R. Civ. P. 26(b)(3) ("Ordinarily, a party may not

discover documents and tangible things that are prepared in anticipation of litigation or for

trial by or for another party or its representative . . . ").  The doctrine's protection can be

overcome, however, when a party shows a "substantial need for the materials to prepare its

case and cannot, without undue hardship, obtain their substantial equivalent by other

means." Fed. R. Civ. P. 26(b)(3)(A)(ii).  Likewise, the deliberative process privilege can

be overcome upon "a sufficient showing of a particularized need to outweigh the reasons

for confidentiality." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). The attorney-client privilege "protects confidential communications between a client and her attorney made for the purpose of facilitating the rendition of legal services to the client." *United States v. Yielding*, 657 F.3d 688, 707 (8th Cir. 2011). It is "well established under common law" that attorney-client communications are only subject to disclosure upon waiver by the client holding the privilege. *E.g., Wells Fargo & Co. v. United States*, No. MISC. 10-57 JRT/JJG, 2013 WL 2444639, at *41 (D. Minn. June 4, 2013).

This is far from "normal" disclosure, and, the information withheld here is exempt from disclosure in FOIA. In *Federal Trade Commission v. Grolier*, 462 U.S. 19 (1983), the Supreme Court considered the question of whether Exemption 5 continued to protect attorney work product after the litigation for which it was generated was terminated. The Court answered that question in the affirmative[1] and then went on to describe the application of Exemption 5 to FOIA. *Grolier*, 462 U.S. at 427-28. The Court expressly rejected the idea that a document should be disclosed under FOIA simply because it might be possible for an individual litigant to justify disclosure of work product or deliberative materials by showing a substantial need for the information. *Grolier*, 462 U.S. at 28. Documents disclosable in litigation only when such a need is shown are not "routinely" or "normally" disclosed, and thus are subject to Exemption 5. *Grolier*, 462 U.S. at 27. The Court explained:

---

[1] The deliberative process privilege also extends beyond the expiration of the decision-making process itself. *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014).

It makes little difference whether a privilege is absolute or qualified in determining how it translates into a discrete category of documents that Congress intended to exempt from disclosure under Exemption 5. Whether its immunity from discovery is absolute or qualified, a protected document cannot be said to be subject to 'routine' disclosure.

*Id.* at 28; *see also Toensing v. United States Dep't of Justice*, 999 F. Supp. 2d 50, 58 (D.D.C. 2013) (denying FOIA request for attorney work product documents of the United States Attorney's Office stating, "exceptions to discovery privileges are not properly considered under Exemption 5").

Plaintiff has not made any attempt in its Amended Complaint to overcome these privileges through showing of substantial need or inability to obtain the requested information through other sources (like Plaintiff's own email archives). As evident from the Vaughn Index, ICE properly asserted these privileges and applied Exemption 5 to protect only that material that would intrude upon the United States' ability to engage in candid deliberation and communication in the context of Mr. Stolley's role as Chief Counsel. This Court should grant ICE's motion for summary judgment on the Exemption 5 material.

### A. The Attorney Work Product Doctrine

ICE properly involved the attorney work product doctrine to redact information from Mr. Stolley's emails.[2] Pineiro Decl. ¶¶ 30-32. Contreras' FOIA request focused on email communications by Mr. Stolley concerning the firm. By its nature, the search pulled

---

[2] There are 16 documents from which information protected by the attorney work product doctrine has been withheld. Vaughn Index at pp. 31-32, 68, 75-76, 402, 405, 424, 462-63, 618-22, 763-65, 848, 998-99, 1133, 2272, 2276-78, 2365, and 2420.

in many documents prepared in the course of litigation against Contreras. This is classic work product and its disclosure would be contrary to the purpose of the doctrine, which is to "promote the operation of the adversary system by ensuring that a party cannot obtain materials that his opponent has prepared in anticipation of litigation." *Regents of the Univ. of Minnesota v. United States*, 340 F.R.D. 293, 304 (D. Minn. 2021).

Federal Rule of Civil Procedure 26(b)(3) codifies the attorney work product doctrine explained by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). There, the Supreme Court recognized, "the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order." *Id*. at 512. The Court explained that it is "essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Id*. at 510-11. Federal Civil Rule of Procedure 26(b)(3) thus protects all "documents and tangible things" that are prepared in anticipation of litigation or for trial. Exemption 5 insures that parties cannot make an end run around this protection.

The Eighth Circuit recognizes a difference between opinion work product, which is "the mental impressions, conclusions, opinions, or legal theories of an attorney," and ordinary work product that does not fit into this category. *In re Murphy*, 560 F.2d 326, 329

n.1 (8th Cir. 1977).   Opinion work product is entitled to near absolute immunity from discovery.  *Id.* at 336.  Ordinary work product is subject to the substantial need showing of the rule.  The documents withheld in this case are primarily opinion work product.

The redacted work product documents are internal email communications between Chief Counsel and Assistant Chief Counsel and include their mental impressions of cases in immigration court.  Many emails contain attorney impressions and analysis presented to Mr. Stolley for discussion and consideration regarding the likelihood of different outcomes. Pineiro Decl. ¶ 30.  These emails are the candid discussion necessary to best represent the United States in immigration court.  *Id.*  Contreras is a law firm that frequently represents clients in immigration proceedings, and it would not be entitled to get these emails during the course of proceedings.   FOIA does not allow Contreras to intrude upon opposing counsel's mental impressions.

There are also many emails between Mr. Stolley and AUSAs or other attorneys at DOJ who are representing the agency in federal court.  For example, there are numerous Exemption 5 withholdings for work product contained in email communications between the United States Attorney's Office and ICE concerning *Wolf v. Giombetti*, 20-cv-873 (JRT/ECW), a  case in active litigation in district court.  *E.g.,* Vaughn Index at pp. 834, 859-60, 875, 889, 979, 1089.  For many of these emails, the AUSA is providing analysis of the strategy the United States should employ in defense of the litigation.

This type of attorney thought process brings the emails directly under the umbrella of work product protected in its most absolute form. *E.g.*, *Sorin v. DOJ*, No. 18-99, 2018 WL 6431027, at *2 (2d Cir. Dec. 6, 2018) (*per curiam*) (protecting emails concerning legal

theories and litigation strategies and attorney notes used for the purpose of furthering a criminal prosecution);  *e.g.*, *United States v. Metro. St. Louis Sewer Dist.*, 952 F.2d 1040, 1044-45 (8th Cir. 1992) (protecting settlement proposals); *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997).  As the Supreme Court said in *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975), "Whatever the outer boundaries of the attorney's work-product rule are, the rule clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy."  That is exactly the type of information withheld and described on the Vaughn Index, and it deserves protection.  This Court should grant the United States' motion for summary judgment.

### B.  The Deliberative Process Privilege

The deliberative process privilege protects the internal deliberations of government agencies, including documents reflecting opinions, deliberations, recommendations, and the like that comprise the process by which decisions are made. *NLRB v. Sears Roebuck & Co.*, 421 U. S. 132, 150 (1975).  The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001).  Deliberation of litigation strategy, making informed recommendations to supervisors, and deciding how to resolve cases is exactly the type of deliberation ICE ACCs are expected to do.

The deliberative process privilege "allow[s] agencies freely to explore alternative avenues of action and to engage in internal debates without fear of public scrutiny." *State*

*of Mo. ex rel. Shorr v. United States Army Corps of Eng'rs*, 147 F.3d 708, 710 (8th Cir. 1998); *see Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014) ("[T]he writer needs to know at the time of writing that the privilege will apply and that the draft will remain confidential, in order for the writer to feel free to provide candid analysis.").

To be protected by this privilege, a document must be both "pre-decisional" and "deliberative." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975); *Missouri Coal. for Env't Found. v. United States Army Corps of Eng'rs*, 542 F.3d 1204, 1211 (8th Cir. 2008). "A predecisional document may be virtually any document that contains personal opinions and is designed to assist agency decision-makers in making their decisions." *Missouri Coal*, 542 F.3d at 1211. Facts included in a predecisional document are also exempt to the extent their disclosure "would expose the deliberative process of an agency." *Id.*

Here, this standard is obviously met. There are several contexts in which the deliberative process privilege arises in this data. First, Mr. Stolley is a supervisor of attorneys and frequently called on in the pre-decisional stage of litigation to consult and advise the attorneys he supervises regarding cases in immigration court. *See*, *e.g.*, Vaughn Index at pp. 82, 107-08, 161-62; Pineiro Decl. ¶ 25. Second, Mr. Stolley, as Chief Counsel, also serves in an advisory role to ICE and the St. Paul Field Office and within the broader purview of ICE's OPLA. At times, he provides legal advice or other information that is material to operational and policy decisions being made by his client. *See, e.g.*, Vaughn Index at pp. 91, 111-115 (Mr. Stolley discusses the legal sufficiency of a request for humanitarian parole with his client, and the decision maker, St. Paul Field Office Director

Berg); 145-46 (providing advice on whether to reinstate a removal order to an ERO line officer); 248-250; Pineiro Decl. ¶¶ 26, 28.   Third, Mr. Stolley serves as a point-of-contact and in-house counsel in litigation filed in federal court in which ICE or the United States is a party, represented by DOJ.  *See, e.g.*, Vaughn Index at 405-07, 508; Pineiro Decl. ¶¶ 25, 27.[3]

Exemption 5 protects discussions about what strategy to take in particular cases or when advising clients as to particular courses of action.  *Lazaridis v. DOJ*, 766 F. Supp. 2d 134, 143 (D.D.C. 2011) (holding that agency properly asserted Exemption 5 to withhold "predominantly as attorney work-product but also as deliberative process material" various records prepared by the U.S. Attorney's Office pertaining to plaintiff's "pending kidnapping case"); *Miller v. DOJ*, 562 F. Supp. 2d 82, 113 (D.D.C. 2008) (protecting documents created in considering whether to bring criminal charges against requester).

ICE's need to protect these communications is great.  Mr. Pineiro explained the importance in the variety of contexts in which the privilege is asserted.  He stated:

> The need for ICE attorneys to be able to candidly express their opinion to DOJ attorneys representing ICE in federal court regarding the merits of legal arguments to be argued on behalf of ICE, or how to respond to opposing side's filings, is great. Likewise, the need for ICE attorneys to be able to provide candid legal recommendations and opinion to their clients at ERO and HSI regarding various contemplated enforcement actions, is just as great. Disclosure would discourage the expression of candid opinions and inhibit free and frank exchange of information and ideas between agency personnel and ensure personnel would be less inclined to freely memorialize their

---

[3] Because of the variety of circumstances under which deliberative process applies, it is asserted frequently throughout the data set of documents produced.  *See, e.g.*, Vaughn Index at pp. 4-6, 13, 16, 19, 31-32, 38-39, 42-45, 55-58, 61-65, 68, 72-73, 75-76, 78-79, 82, 83-85, 88-89,  91, 107-08, 111-115, 117-121, 139-141, 145-46, 194-57, 161-62, 164-65, 248-50, 254, 298, 302, 313, 316, 320, 349, *et passim*.

> thoughts regarding litigation strategies, which would adversely affect the
> ability of ICE to effectively conduct government business.

Pineiro Decl. ¶ 28. Disclosing these communications to opposing counsel and the broader

public would no doubt chill frank discussion and negatively impact the United States.

The discussions between and amongst ICE or ICE and DOJ counsel precede a final

decision by the agency, which will be reflected in a legal position paper, a decision on a

requested type of relief, or an operation undertaken.  For example, on page 5 Mr. Stolley

engages in a discussion with one of the attorneys he supervises regarding the exercise of

prosecutorial discretion.  As noted in the Vaughn Index, "[d]ifferent possible litigation

strategies are considered and then discarded, without coming to a final decision."  The final

decision would be reflected in whether that prosecution commenced publicly.  On pages

618-622, there is an email exchange in which an ERO client reaches out to counsel to seek

advice.  From there, the ACC forwards the question to Mr. Stolley, proposes a solution,

and seeks Mr. Stolley's input.

The final decision of the agency on these points of discussion comes in the form of the

position taken in court, not in the emails discussing how to approach the problem.  These

emails are pre-decisional and deliberative.  The pleadings and documents filed in

immigration court or decisions communicated to individuals in cases involving ICE are the

final documents that reflect the agency's decision.  *United States Fish & Wildlife Serv. v.*

*Sierra Club*, Inc., 209 L. Ed. 2d 78, 141 S. Ct. 777, 786 (2021) (final documents are those

that "communicate[] the agency's settled position" and "have real operative effect." *Id.*

(internal quotation omitted).

Final decisions were released to Contreras.  For example, ICE redacted portions of a conversation between Mr. Stolley and the ICE Associate Deputy Principal Legal Advisor regarding how to respond to emails from private immigration counsel.  Vaughn Index 355-357.  The originating email from private counsel and the agency's final decision, were not redacted.  But, the conversation deliberating on how and whether to respond was redacted.  *Id*.  The decision implicates litigation strategy and precedes an agency decision on final action.  *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1123 (9th Cir. 1988) (finding Exemption 5 and deliberative process privilege applied to "opinions, recommendations, and queries aimed at improving" agency drafts); *Gavin v. U.S. S.E.C.*, No. 04-4522 PAMJSM, 2007 WL 2454156, at *10 (D. Minn. Aug. 23, 2007) (applying the deliberative process to attorney files that included discussion of legal strategy and, as one example, "an internal e-mail regarding a potential conflict of interest in a particular investigation and identifying several issues in the investigation").

This Court should uphold the agency's careful application of Exemption 5 for the deliberative material identified.

### C. Attorney-Client Privilege

"The attorney-client privilege protects confidential communications between a client and his attorney made for the purpose of facilitating the rendering of legal services to the client." *United States v. Spencer*, 700 F.3d 317, 320 (8th Cir. 2012).   The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or

advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

Mr. Pineiro explained the importance of the attorney client privilege to ICE: "[t]o effectively represent ICE and assist their clients, attorneys have to be able to discuss merits of legal arguments with total candor. Disclosure of this information would significantly harm the integrity of the attorney-client relationship and hinder the attorneys from being able to effectively represent the agency's best interests." Pineiro Decl. ¶ 35.  For purposes of applying the attorney-client privilege, a federal agency qualifies as a "client," and federal agency counsel function as attorneys. *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169–70, 131 S. Ct. 2313, 2320–21, 180 L. Ed. 2d 187 (2011); *Coastal States Gas Corp. v. Dep't of Energy*, 199 U.S. App. D.C. 272, 617 F.2d 854, 862-63 (D.C. Cir. 1980); *see Hunt v. U.S. Marine Corps*, 935 F. Supp. 46, 53 (D.D.C. 1996) ("[C]onfidentiality may be inferred when the communications suggest that 'the government is dealing with its attorneys as would any private party seeking advice to protect personal interests.'").

Attorney-client communications often occur between Mr. Stolley and the United States Attorney's office with regard to cases that are in litigation.  Pineiro Decl. ¶ 34.  For example, ICE redacted information at page 2338, which involves a discussion between an AUSA and Mr. Stolley regarding the merits of arguments raised by opposing counsel.  *See also, e.g.,* Vaughn Index at 900, 952, 1045, 1089, 2301.[4]  These types of communications,

---

[4] At times, Mr. Stolley shared AUSA or DOJ advice with the ACCs or other employees in his office.  *E.g.*, Voss Decl., Ex. C at 508, 859-60, 1056, 1071, 1083.  There is no evidence that the advice was ever shared outside of the agency, and Contreras' argument that the United States waived the privilege through this type of intra-agency sharing

which include the exchange of facts and opinions by the client for the purpose of seeking legal advice, are squarely protected by the attorney-client privilege and Exemption 5. *Upjohn*, 449 U.S. 389 ("The lawyer–client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out."); *Hunt*, 935 F. Supp. 53 (client opinions are protected). In other emails, Mr. Stolley communicates with his ICE clients—HIS or ERO–regarding how to handle certain issues. At pages 1150 and 1257, Mr. Stolley did just that, and his communication is appropriately redacted. *See* Vaughn Index at 1150, 1257-58; Pineiro Decl. ¶ 33.

ICE's FOIA office redacted information email communications reflecting legal advice and analysis of ICE counsel provided to their clients on a range of issues, including: "(1) the type of enforcement action to be undertaken by officers as necessitated by legal developments; (2) necessary next steps that need to be undertaken to effectuate removal of a noncitizen; (3) effect of an appeals decision on the removal order of a noncitizen; (4) whether or how to respond to private immigration counsel's requests for various types of

---

should be rejected. Murphy v. TVA, 571 F. Supp. 502, 506 (D.D.C. 2006) (circulating attorney-client privileged information within the agency does not waive the privilege), citing *Upjohn*,  449 U.S. 383, 392-97 (extending attorney-client privilege beyond corporate control group). Only disclosure to an "opposing or third party," certainly not other federal government attorneys or employees, can waive the attorney-client privilege. *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 239 F.R.D. 572, 580 (D.S.D. 2006).

enforcement actions to be taken with respect to their noncitizen clients, etc." *Id*. Each of these areas are important components of ICE's mission to enforce immigration laws.

Attorney-client privilege is not limited to the context of litigation. *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 377 (4th Cir. 2009). Nor is the protection limited just to high-level decision makers. *Upjohn*, 449 U.S. at 392-97. Mr. Stolley frequently engaged in communication with the clients he serves and with DOJ as a client representative. ICE has fully explained the basis for its withholdings under Exemption 5 for attorney-client communication, and this Court should grant its motion for summary judgment as to all of them.

### D. The Nature of these Documents Means that Many will be Subject to Multiple Privileges.

Contreras' request sought emails from the account of a supervisory attorney responsible for overseeing litigation in immigration court, providing guidance and counsel to his agency, and supporting district court litigation. It is no surprise that much of the material contained in those emails would be privileged, and Contreras is not entitled to that information through FOIA. ICE's careful redaction and detailed Vaughn index satisfy its burden on summary judgment.

For example, Plaintiff challenges ICE's redactions under Exemption 5 in an email chain between Mr. Stolley, several DOJ and EOIR attorneys, and an AUSA pertaining to a case*, XXXXX*, No. 20-cv-1330 (JRT/BRT) (D. Minn.), in active litigation in district court. *See* Voss Declaration, Ex. C at pp. 405-407. Plaintiff argues that because ICE is not a party expressly named in that litigation the withholding under Exemption 5 is not appropriate.

In the email, the AUSA describes his analysis of and recommendations on how to respond to the plaintiff's proposed Second Amended Complaint.  The AUSA solicits input from Mr. Stolley and the other attorneys on the email chain.  *Id.*  Though ICE is not specifically named as a defendant, both the Department of Homeland Security and the United States of America are, along with EOIR.  It is perfectly appropriate for the AUSA to communicate with all of the attorneys on the chain regarding the status of the case and strategy for litigation.[5]

Likewise, Plaintiff makes the same objection as to information withheld on page 320-323.  ICE's Vaughn Index explained that an ERO officer requested legal advice from Mr. Stolley and DOJ.  See Voss Decl., Ex. C at 320.  Mr. Stolley provided his legal advice regarding how to implement a court's decision.  Discussion regarding how to implement a decision and what final action to take is clearly deliberative and protected.  It is also attorney-client communication in which the client explicitly seeks advice.

Counsel emails like the ones described above can be at once deliberative, attorney work product, and attorney-client communication.  *See Hawkinson v. ICE*, 554 F. Supp. 3d 253 (D. Mass. 2021).  In *Hawkinson*, the court granted ICE and EOIR's motions for summary judgment and upheld those agencies' decision to invoke Exemption 5 for similar material.  The Court recognized that a DOJ OIL attorney serves in a capacity as counsel to

---

[5] Components of the defendant agencies certainly share a common interest privilege.  In this circuit, "[t]he common interest may be either legal, factual, or strategic in nature." *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 239 F.R.D. 572, 583 (D.S.D. 2006) (finding common interest privilege applied and protecting information between multiple parties and attorney).

both agencies and email communications in confidence amongst that group could be deliberative process, work product, and attorney-client communications.  554 F. Supp. 3d at 268 ("the advice contained in the three e-mails in question does appear to have been . . . interim in nature and therefore deliberative, pending final outcome of the case and appeals and/or direction from other sources.");  554 F. Supp. 3d at 554 F. Supp. 3d at 270 ("the communications were made in confidence between EOIR and ICE – the clients—and their attorneys within DOJ OIL[;] . . . the e-mails are protected by the attorney-client privilege . . . [and] work-product doctrine.").  There are numerous grounds to protect the information redacted and to safeguard the ability of ICE, its lawyers and clients, and other components of the United States to have free and frank discussions on litigation strategy and policy.  *Upjohn*, 449 U.S. 389.

### D. Segregability

Mr. Pineiro's declaration also makes clear that consideration was given to whether facts and non-exempt material could be segregated from the exempt material in the documents.  Pineiro Decl. ¶¶ 51-53.  ICE conducted a line-by-line review of the thousands of pages of responsive emails.  *Id*. ¶ 52.  To the extent emails convey factual information not inextricably intertwined with the legal advice or deliberation, the facts were disclosed.  For example, ICE redacted portions of pages 1016-1017, which is an email chain between an AUSA and Mr. Stolley and other agency personnel, entitled, in part, "Analysis of Plaintiffs' Opposition to Defendants' Motion to Dismiss."  ICE redacted the attorney analysis that was provided to ICE as client during active litigation, but produced information like the time and date of the filing and hearing and a proposed timeline for

submitting a draft to ICE for review.  This factual information was easily segregable and did not convey attorney impressions. ICE appropriately disclosed it.

As another example, the email chain between pages 1045-1065 concerns a temporary restraining order that may be filed against the United States in *Wolf v. Giombetti*, No. 20-cv-873 (JRT/ECW) (D. Minn.); *see* Vaughn Index at pp. 1045.  ICE did not redact the impression a non-attorney ICE employee who was not providing input on the decision making process (2021-ICLI-0043998). But the emails in which the United States Attorney is communicating with ICE counsel regarding how and whether to respond to counsel were withheld under Exemption 5.

Factual information that is intricately intertwined with the deliberative nature of the discussion and disclosure of the facts selected for inclusion in that discussion would expose attorney work product and deliberative process was not disclosed.  *Missouri Coal.*, 542 F.3d at 1211.  The AUSA's same analysis document, Vaughn Decl. at 1016-17, does rely on particular facts and highlight them to make conclusions, but these facts are inextricably intertwined, and properly withheld.  *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir. 1986) ("This mental selective process reflects Burns' legal theories and thought processes, which are protected as work product."); *E.E.O.C. v. HBE Corp.*, 157 F.R.D. 465, 466 (E.D. Mo. 1994) ("It is the selection and compilation of the relevant facts that is at the heart of the work product doctrine.").

Plaintiff cannot overcome ICE's withholdings simply by alleging suspicions and "cover up."  Voss Decl., Ex. C at 593.  There is no cover up attempted here, and it is reasonable and should be expected that communications between attorneys representing

ICE in immigration court and district court will contain protected information.[6]   Mr. Pineiro's declaration should be credited against unsupported suspicion and attempt to disrupt the free and open communication between attorneys and clients.   *Rabushka ex rel. U.S. v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997) (rejecting suspicion to overcome privilege assertion); *Fair Isaac Corp. v. Experian Info. Sols., Inc.*, No. CV 06-4112 (ADM/JSM), 2009 WL 10677479, at *15 (D. Minn. Mar. 23, 2009), *on reconsideration in part*, No. CV 06-4112 (ADM/JSM), 2009 WL 10677709 (D. Minn. Sept. 4, 2009) (same).

The United States has satisfied its burden of proof on the application of Exemption 5, and this Court should grant its motion for summary judgment.

### III.    The United States Properly Withheld Private Information Under Exemptions 6 And 7(C) .

ICE properly withheld the names and identifying information of individuals in the file under both FOIA Exemption 6, 552 U.S.C. (b)(6), and 7(c), 5 U.S.C. § 552(b)(7)(C). Pineiro Decl., ¶¶ 36-50.  In its releases, ICE generally applied Exemption 6 and 7(c) to withhold the names, email addresses and phone numbers of ICE and DOJ non-supervisory attorneys, ERO and HSI officers, and personally identifying information (PII) of other third parties, which largely include noncitizen clients of the Contreras & Metelska law firm and/or attorneys within that law firm that did not provide a signed privacy waiver as to

---

[6] With regard to pages 593-606, Contreras alleges that email not qualifying under Exemption 5 is being "covered up" with legitimate Exemption 5 information.  The emails at issue here are between DOJ counsel representing the agency in active litigation in district court.  They start with a request by a private attorney for a particular statement to be made by ICE, and reflect the AUSA's consultation with ICE attorneys regarding their position on that request.  To the extent there is factual material, ICE determined it was inextricably intertwined with the attorney-client privileged conversation and not segregable.

their PII.   Pineiro Decl. ¶ 20.   FOIA Exemption 6 permits agencies to withhold all information in "personnel and medical files *and similar files*," when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(6) (emphasis added).   Exemption (b)(7)(C) further provides protection for law enforcement information the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy."   552 U.S.C. § 552(b)(7)(C).

Both of these exemptions require the agency, and the federal court on review, to "balance the privacy interest of the individual against the public interest in disclosure." *See*, *e.g.*, *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989) (Exemption 7(C)); *Am. Farm Bureau Fed. v. E.P.A.*, 836 F.3d 963, 970 (8th Cir. 2016) (pertaining to Exemption 6).

### A.  Exemption 7(C)

Exemptions 6 and 7(C) are similar but do not overlap perfectly.   Exemption 7(C)'s privacy language is broader than Exemption 6.   *United States Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 756 (1989).   Exemption 7(C) uses more qualified language to protect any information that "<u>could</u> <u>reasonably be expected to</u> constitute an unwarranted invasion of personal privacy," as opposed to the more definitive language in Exemption 6.   5 U.S.C. §  552(b)(6) ("<u>would</u> constitute a <u>clearly unwarranted</u> invasion of personal privacy") (emphasis added).   As the Supreme Court and many other courts have explained, Congress's choice of broader language was intentional based upon the increased sensitivity of an individual's personal information being used in the context of a law enforcement action.   *Reporters Comm.*, 489 U.S. at 756 ns.8-9; *Fitzgibbon v. CIA*,

911 F.2d 755, 767 (D.C. Cir. 1990) (recognizing "strong interest' of individuals, whether they be suspects, witnesses, or investigators, 'in not being associated unwarrantedly with alleged criminal activity") (cleaned up).

When private information under 7(C) is sought, the requester must do more than show a general, personal interest in the disclosure.  The requester must show: 1) "that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake; and (2) "the information is likely to advance that interest." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004).  While the Plaintiff's objections to ICE's withholdings, and much of its Amended Complaint, makes allegations of misfeasance, to overcome the privacy protections of 7(C) Contreras's allegations must be supported by evidence.  "[W]here there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174.

The information withheld from the United States' production clearly falls within Exemption 7(C) and Plaintiff has not shown any evidence that would warrant overcoming the privacy interests of those whose information was withheld.  As set forward in detail in the United States' Vaughn Index, there are several types of information that were redacted as a protection of privacy interests.

| Redaction Type | Pages |
|---|---|
| Names and other PII of non-supervisory ICE or DOJ Attorneys | *E.g.,* Vaughn Index at pp. 208, 210, 429, 468, 508, 586, 626, 639, 649, 676, 780, 787, 859, 892, 897 |
| Names and other PII of third party participants in immigration proceedings, including parties and private attorneys | *E.g.,* Vaughn Index at pp. 31, 34, 729, 883, 2339, 2404, 2420 |
| Names and other PII of non-supervisory law enforcement agents from HSI or ERO | *E.g.,* Vaughn Index at pp. 676, 748, 1150, 2415 |

*See generally*, Pineiro Decl. ¶¶ 42-50.

There can be no question that the records at issue are law enforcement records protected by Exemption 7(C). Pineiro Decl. ¶¶ 36-38; Amended Compl. ¶ 8 ("ICE is responsible for immigration investigations, enforcement, and removal operations."). The records were all within the email of an attorney supervisor for ICE. "ICE is the largest investigative arm of DHS and is responsible for identifying and eliminating vulnerabilities within the nation's borders. ICE is tasked with preventing any activities that threaten national security and public safety by investigating the people, money, and materials that support illegal enterprises." Pineiro Decl. ¶ 37. Mr. Stolley, and OPLA, enforce the immigration laws through prosecuting removal proceedings in immigration court. Mr. Stolley and his team also work frequently with the United States Attorney's Office to represent the United States in district court litigation concerning the application of federal immigration law.

The Eighth Circuit has adopted a per se rule that all documents prepared by a law enforcement agency qualify for consideration under Exemption 7.  *Kuehnert v. FBI*, 620 F.2d 662, 666 (8th Cir. 1980) (discussing and applying per se standard of First Circuit to determine that FBI need not show law enforcement purpose of particular investigation as precondition to invoking Exemption 7). That rule applies to ICE and the communications at issue here.  *Guillen v. United States Department of Homeland Security and ICE*, No. 20-1713 (MJD/ECW), 2021 WL 4482985 at * (D. Minn. Sept. 30, 2021).

It is well-established that the names of and other PII of law enforcement personnel, witnesses, and third parties in law enforcement files are protected by Exemption 7(C).  The Eighth Circuit has applied the privilege to third parties whose names are "merely mentioned," persons of "investigative interest," persons who assisted with an implied assurance of confidentiality, and "state and local law enforcement personnel."  *Peltier v. F.B.I.*, 563 F.3d 754, 762 (8th Cir. 2009); *see also Adionser v. Dep't of Justice*, 811 F. Supp. 2d 284, 299 (D.D.C. 2011) (applying Exemption 7(C) to protect the identity of third parties, special agents, government employees, and local law enforcement personnel who participate in the investigation and prosecution of plaintiff's case).

The vast majority of the redactions are for the names and other identifying information of non-supervisory ICE and DOJ attorneys and ICE law enforcement officers. Mr. Pineiro explained that ICE gave consideration to the interest in these attorneys and agents in not becoming targets of harassment by virtue of their participation in the enforcement of immigration laws.  They also have an interest in ensuring non-interference with the performance of their official duties.  In recognition of the above-described strong

privacy interest of all ICE employees, on June 11, 2020, the Office of Personnel Management ("OPM") approved ICE's request to be designated as a "security/sensitive" agency for FOIA purposes, which ensures that OPM would, henceforth, withhold all personally identifying information pertaining to ICE employees.   Pineiro Decl. ¶ 44.   ICE and DOJ attorneys generally have a privacy interest in not having their PII revealed. *Hawkinson*, 554 F. Supp. 3d at 274; Slip Op., *Farah v. DOJ*, 20-cv-622 (JRT/DTS) (D. Minn. Apr. 30, 2021) [ECF No. 43], at 4-5 (upholding redaction of non-supervisory law enforcement personnel under Exemptions 6 and 7(C)).

These concerns establish the real privacy interests at stake, with no opposing policy interest in disclosure.  Plaintiff's lawsuit is largely motivated by an interest in Mr. Stolley's communication policy towards Plaintiff.  Plaintiff makes generalized allegations that, for example, "the identity of recipients [of Stolley's communication directive] is relevant to determining who colluded with Mr. Stolley or otherwise followed his instructions to discriminate against Contreras & Metelska or any lawyers at the firm."  Voss Decl., Ex. C, p. 181; *see also* 339.  Or, "Mr. Stolley is defaming Gloria Contreras Edin in a message to an unknown individual."  Voss Decl., Ex. C, p. 920; *see also* Voss Decl., Ex. C, p. 963.

Mr. Stolley's emails are not redacted in their entirety, and Contreras can identify instances in which Mr. Stolley communicated his policy to employees other people.  For example, in one email to an Immigration Judge, which was fully disclosed, Mr. Stolley stated, "Ms. Contreras-Edin is well aware of the reasons my office will communicate with hers only on the record in court."  2021-ICLI-00043, 429.  Plaintiff can also identify instances in which its emails received no response.  The names of non-supervisory

individuals to whom this instruction was sent do not add anything to the understanding of how ICE conducted its business with the firm.  Pineiro Decl. ¶ 45.

In another instance, Contreras asserts that redaction of an immigration judge's email address is objectionable because the communication "appears to be ex parte" between Mr. Stolley and the judge.  Voss Decl., Ex. C, p. 429.  However, as the Vaughn index explains, it is only the email address of the Court that is redacted.  The email originating the contact was sent by Contreras to the immigration judge, the name of the judge is not redacted, and the content of the email sent by Mr. Stolley is disclosed.  Plaintiff's mistaken accusation of ex parte contact, when all of the pertinent information is disclosed, cannot overcome the interest of the judge in having his email address protected from broader public disclosure under FOIA.

Allegations of malfeasance do not become credible or validated simply because they are stated emphatically.  The United States certainly disputes that there is any malfeasance here. The fact that Mr. Stolley had a policy for his office to communicate with Contreras only through formal pleadings is well-established.  Nowhere in the Amended Complaint has Plaintiff shown there was "discrimination" or "defamation."   Plaintiff cannot come close to establishing the type of evidence required by *Favish* to overcome the privacy interests protected by ICE's redactions.

Other redactions of PII pertain to third party individuals, including individual parties to immigration proceedings or lawyers involved in those proceedings.  Pineiro Decl. ¶ 46. Third party individuals have a recognized privacy interest in not being publicly associated with law enforcement investigations.  The identities of persons named in law enforcement

files (whether or not the named individual is the target of investigations or law enforcement actions) are properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C) in recognition of the stigmatizing connotation carried by the mere mention of individuals in law enforcement files. *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990).

Contreras has no particular need for the private information of third parties and any relation between the identity of those individuals and Mr. Stolley's communication policy is much further removed. Pineiro Decl. ¶ 47. Many of the individuals at issue here were Plaintiff's own clients, and presumably, they have access to the files of those individuals and do not need them through FOIA. Disclosing those names publicly would not add to or further Plaintiff's purposes.

The balance of interests clearly favors redaction. Substantial privacy interests are implicated, whereas the disclosure of these names does not serve any purpose to evaluating the operation of the government's business. What action the government took, not the employees who completed the function, is the important issue of public concern. Where an individual's privacy information "is in the Government's control as a compilation, rather than as a record of "what the Government is up to," the privacy interest protected by Exemption 7(C) is in fact at its apex while the FOIA-based public interest in disclosure is at its nadir." *Reporters Comm.*, 489 U.S. at 780.

## B.  Exemption 6

Because the application of Exemption 7(C) is so clear, the United States will not repeat its arguments as to the importance of the privacy interest at stake here. Mr. Stolley's email archive is a similar file covered by Exemption 6, just like any lawyer's

correspondence file that discusses individuals involved in cases ICE is investigating and prosecuting. *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of State*, No. CV 19-1344 (RBW), 2022 WL 1801054, at *13 (D.D.C. June 2, 2022) (holding that email addresses were properly withheld under Exemption 6); *Bernegger v. Executive Office for United States Attorneys*, 334 F. Supp. 3d 74, 89 (D.D.C. 2018) (finding names, addresses, and telephone numbers of AUSAs, legal assistants, law enforcement officers, and other personally identifiable information related to witness or nonparty individuals properly withholdable under Exemptions 6 and 7(C)). The Supreme Court's broad interpretation of what a "similar file" is under Exemption 6: "[An individual's privacy right] surely was not intended to turn upon the label of the file which contains the damaging information." *United States Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599-603 (1982).

The privacy interest held by an individual in their name and other PII, such as their email address or phone number is well-established. *Id.* The Eighth Circuit has been protective of exactly this type of information. *Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963, 973-74 (8th Cir. 2016) (holding agency improperly decided that Exemption 6 did not protect personal information about owners, and noting information revealed little about agency's own conduct) (reverse FOIA suit). Plaintiff does not allege any policy balance that would justify overcoming these basic, important privacy interests. This Court should reject Plaintiff's challenge to the redactions under Exemption 6.

## IV.    FOIA Exemption (b)(3)

There are several emails that contains information withheld under FOIA Exemption 3. *See* Vaughn Index, 2021-ICLI-00043 at 254, 289-90, 362, 381, 513-14. This important

exemption allows an agency to withhold documents "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." Mr. Pineiro explained in his declaration that "Portions of seven pages of records were withheld because [an] unspecified statute that applies to these withholdings explicitly prohibits the disclosure of any information pertaining to the protected individual, except pursuant to exceptions not applicable here. The agency is further unable to identify the applicable statute because doing so would circumvent the confidentiality protections the statute is intended to establish." Pineiro Decl. ¶ 22. Plaintiff's counsel has indicated during the meet and confer process that he would support submission of the document for in camera review by the Court to determine the applicability of Exemption 3. The United States would request that this Court allow it to submit ex parte a short pleading outlining the statutory basis for the withholding with that in camera submission.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court grant its motion for summary judgment in its entirety.

Respectfully submitted,

Dated:  April 25, 2023

ANDREW M. LUGER
United States Attorney

*s/ Ana H. Voss*

BY:  ANA H. VOSS
Assistant U.S. Attorney
Attorney ID No.  483656DC
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone:  612-664-5600
Email: Ana.Voss@usdoj.gov