UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 21-cv-01148-JRT-JFD

CONTRERAS & METELSKA, P.A.,

               Plaintiff,

    v.

U.S. IMMIGRATION & CUSTOMS
ENFORCEMENT AND U.S.
DEPARTMENT OF HOMELAND
SECURITY,

               Defendants.

**COMBINED MEMORANDUM AS REPLY IN SUPPORT OF U.S. ICE AND DHS'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The Defendants, United States Immigration and Customs Enforcement (ICE) and the Department of Homeland Security (DHS) (collectively the United States), hereby submit this Combined Memorandum as a Reply in Support of their Motion for Summary Judgment [ECF No. 34] and in Opposition to Plaintiff's Motion for Summary Judgment [ECF No. 39]. Plaintiff's opposition is full of speculation and alleges misconduct and bad faith both in the underlying government action and in the agency's processing of the FOIA requests. It does not, however, include any facts or law to support these broad allegations. The agency's underlying conduct is not at issue here. The United States has met its burden on summary judgment to describe the FOIA process and justify the exemptions applied to protect the sensitive information in ICE attorney emails in cases involving the United States immigration laws. Plaintiff has not overcome the good faith efforts of the agency. Plaintiff's motion should be denied. The United States respectfully requests that the Court

grant the United States' motion for the reasons set forward in the Opening Memorandum [ECF No. 35] and below.

**I.      Mr. Pineiro's Declaration was made in Good Faith and Provides enough detail for this Court to grant summary judgment to the United States on the withholdings.**

This Court can and should rely on the declaration of Mr. Pineiro because it is proper evidence to support the redactions the agency applied to exempt material.  Plaintiff's argument that it should be struck is not well founded.  Opposition Memorandum ("Pl's Opp. Memo."), ECF No. 42 at 12-15.  Mr. Pineiro was clear that his knowledge comes as a result of his supervisory role as Director of ICE's FOIA office.  Pineiro Decl., ECF No. 37, ¶ 1.  He describes his familiarity with ICE's procedures for handling FOIA requests, as well of his review of documents and information provided by ICE employees prior to making his declaration.  *Id*. ¶¶ 2-3.  Mr. Pineiro has worked in ICE's FOIA office for almost a decade, *id*. ¶ 1, which supports both his personal knowledge and his credibility for this Court.

This type of declaration has been accepted by numerous courts in the context of FOIA litigation.  *E.g.*, *Black Hills Clean Water All. v. United States Forest Serv.*, No. 5:21-CV-5072-LLP, 2023 WL 2687089, at *7 (D.S.D. Mar. 29, 2023) (granting the U.S. Forest Service's motion for summary judgment on the basis of a supervisor's declaration).  Citing a long-standing Second Circuit, opinion, the Court in *Black Hills* explained, "An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search." *Id. citing Carney v. DOJ*, 19 F.3d 807,

814 (2d Cir. 1994). *See also Davidson v. Fed. Bureau of Prisons*, No. 17-5429, 2017 WL 8897005, at *3 (6th Cir. Nov. 29, 2017) ("In the FOIA context, the personal knowledge requirement is met where a declarant has personal knowledge of the procedures used in handling the request and familiarity with the documents at issue."); *Inst. for Policy Studies v. C.I.A.*, 885 F. Supp. 2d 120, 134 (D.D.C. 2012) ("general familiarity" with the records is all that is required in FOIA); *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 19 (D.D.C. 2009) ("Because a declarant is deemed to have personal knowledge if he has a general familiarity with the responsive records and procedures used to identify those records, the declarant is not required to independently verify the information contained in each responsive record."). The agency is certainly not required to produce the employees who actually conducted the redaction of documents. The only issue before the Court is whether ICE"s justification for the redactions is supported under FOIA, not the exact mechanism by which those redactions were applied.

Plaintiff's complaints about the sufficiency of Mr. Pineiro's declaration fail. Mr. Pineiro has more than just a passing familiarity with ICE's FOIA procedures, and has set forward the FOIA policies as applied to the documents in question with great detail. The document set that was produced to Plaintiff is thousands of pages with many, many redactions. The declaration and accompanying Vaughn Index, which does go through each and every specific redaction, more than adequately describe the basis of the agency's withholdings. Mr. Pineiro's declaration should be accepted and credited by the Court as sufficient support for the agency's redactions.

## II.     The United States is entitled to summary judgment.

The United States has met its burden to justify the exemptions applied in its FOIA disclosure.   Plaintiff seems to argue that the Vaughn Index must be exhaustive in its description.   That is not required.   A Vaughn Index needs only "fairly" describe or be "relatively detailed" to allow for "adequate adversary testing."  *Barney v. IRS*, 618 F.2d 1268, 1272 (8th Cir. 1980); *King v. DOJ*, 830 F.2d 210, 219 (D.C. Cir. 1987) (quoting Vaughn v. Rosen, 484 F.2d 820, 826 (D.C. Cir. 1973)).    The Vaughn Index here, accompanied by the two Pineiro Declarations, reasonably describes the contents of the documents why the agency redacted each document.

Because the United States has carried its initial burden of justifying the exemptions, the burden on summary judgment shifts to Plaintiff "either to provide evidence that the documents do not fall within [the exemptions] or to establish the [government's] bad faith." *Peltier v. Fed. Bureau of Investigation*, No. CV 02-4328 (DWF/SRN), 2006 WL 8439445, at *7 (D. Minn. Oct. 24, 2006), *report and recommendation adopted*, No. CV 02-4328 (DWF/SRN), 2007 WL 9719202 (D. Minn. Feb. 9, 2007), *aff'd sub nom. Peltier v. F.B.I.*, 563 F.3d 754 (8th Cir. 2009).  Plaintiff primarily chooses to proceed by alleging bad faith on behalf of the government, but does not meet its burden.  Conclusory allegations of bad faith that are unsupported by facts, however, cannot defeat summary judgment. *Wilson v. DOJ*, 270 F. Supp. 3d 248, 259 (D.D.C. 2017).  It is simply not sufficient to proceed on the basis of a "belief" that there is bad faith.  Pl's Opp. Memo., ECF No. 42 at 26.

Plaintiff spends much of its opposition accusing the agency of bad faith because, throughout the litigation, the agency has reviewed and re-reviewed its withholdings and

agreed to release additional material.  To the contrary, it is evidence of the agency's good faith attempt to resolve immaterial disputes and provide plaintiff with information.  An agency is generally required to assert all exemptions at once,[1] but we are aware of no case law suggesting that it cannot withdraw redactions or else be accused of bad faith.  That result is contrary to the law and would be inefficient.  Supplemental Pineiro Decl. ¶ 6.

The agency's disclosure does not mean it concedes that there was no basis for redaction.  The Supreme Court has explained that FOIA exemptions are discretionary, not mandatory.  *Chrysler Corp. v. Brown*, 441 U.S. 281, 293 (1979) (reasoning that application of agency FOIA policies may require "some balancing and accommodation" and noting that "Congress did not design the FOIA exemptions to be mandatory bars to disclosure").  As Mr. Pineiro explains in his Supplemental Declaration, "ICE routinely determines, in an exercise of discretion and subject to the foreseeable harm analysis, to release more information once the full scope of Exemption (b)(5) challenges is made known. ICE does this in an effort to narrow down or sometimes fully resolve all issues and thus facilitate an efficient management of the Court's docket."  Supplemental Pineiro Decl. ¶ 6.  It is perfectly reasonable for the agency to make that calculation during the preparation of its Vaughn index and its brief to this court.

---

[1] *Senate of P.R. v. DOJ*, 823 F.2d 574 (D.C. Cir. 1987) (Judge Ginsburg found there was a valid reason to allow the DOJ to assert new exemptions late in the dispute) (cited by Plaintiff, ECF No. 42 at 25). *Jordan v. DOJ*, 591 F.2d 753, 779-80 (D.C. Cir. 1978) (general rule requires an agency to assert any and all exemptions at the beginning of the litigation).  If an agency is ever permitted to add new exemptions, it cannot be that it is prevented from removing exemptions.

There is no bad faith in Defendant's "error rate" here, and Plaintiff's reliance on the agency's disclosures as a means to controvert the substance of the remaining redactions is circular and illogical. The number of "errors" was few, and in the context of the volume of pages (more than 2,000) and the number of redactions, inadvertent redaction errors are not bad faith. Especially where the agency corrected them quickly.[2]

Plaintiff also references Mr. Stolley's alleged bad faith numerous times in its Opposition Memorandum. *E.g.*, ECF No. 42 at 5, 6, 34, 35. While the agency disagrees that there was any such bad faith, that allegation is immaterial to the Court's analysis in this FOIA action. *Budik v. Dep't of Army*, 742 F. Supp. 2d 20, 32 (D.D.C. 2010) (emphasizing that "plaintiff cannot challenge the adequacy of a search based on the underlying actions that are the subject of the request" and rejecting claim of "bad faith"); *Peltier*, No. CV 02-4328 (DWF/SRN), 2006 WL 8439445, at *8 ("[W]hatever government misconduct might have occurred in the 1970s and early 1980s in the criminal prosecution of Plaintiff does not establish that the FBI is now improperly asserting FOIA exemptions."). The United States properly asserted exemptions and narrowed them within its discretion. The United States is entitled to summary judgment.

---

[2] As set forward in the Second Declaration of Ana Voss, it was logistics, not bad faith that caused a delay in the provision of the re-processed documents to Plaintiffs' counsel. In any event, Plaintiff now has all of the re-processed documents and an opportunity to brief any argument regarding those documents in its reply memorandum. The United States does not request any additional opportunity to respond and would not object if Plaintiff requests more time or additional words to respond.

### III.   There is No Crime, Fraud, or Misconduct that would Justify Waiving the Privileges Asserted under Exemption 5.

Plaintiff argues in several different ways that Mr. Stolley's allegedly improper conduct vitiates Exemption 5 as to many of the redactions.  As with many of Plaintiff's arguments, the basis for the belief that misconduct has occurred is wholly off.  Plaintiff does not cite an ethical rule or other obligation it believes Mr. Stolley violated.  Plaintiff invokes 18 U.S.C. § 1001 to allege that Mr. Solley may have committed a crime when making statements to attorneys or other personnel within the federal government, but has no citation to any case in which such behavior was prosecuted.  None of these theories accurately state the law and they do not impact the application of Exemption 5 in FOIA.

### a.  Only Extreme, Nefarious Conduct Could Possibly Waive Exemption 5 Protections.

As a court in the Southern District of New York recently explained, it is not clear that there is any government misconduct exception that would override FOIA exemptions. *Austin Sanctuary Network v. United States ICE*, No. 20-CV-01686 (LJL), 2022 WL 4356732 (S.D.N.Y. Sept. 19, 2022).   In *Austin*, the issue arose in that court in the context of a case in which ICE was accused of targeting activists with fines and penalties.  The court reviewed the law in the D.C. Circuit, which has special expertise in FOIA, and found there was no uniform rule as to the existence of a "government misconduct" exception to FOIA.  Even if there is such an exception, the Court explained that it is extremely limited:

> The courts appear to be uniform, however, in holding that, to the extent the exception does exist, it must be applied narrowly and a requestor seeking to avail itself of the government misconduct exception must clear a high bar. Since the very purpose of FOIA is to help uncover government misconduct,

if any allegation of misconduct sufficed to pierce the deliberative process privilege, the exception would soon swallow the privilege whole. Consequently, the relevant consideration to trigger the exception is the egregiousness of the contents of the discussion, not the egregiousness of the underlying conduct that the discussion concerns. In the rare cases that have actually applied the exception, the policy discussions sought to be protected with the deliberative process privilege were so out of bounds that merely discussing them was evidence of a serious breach of the responsibilities of representative government, *i.e.*, the very discussion was an act of government misconduct. Moreover, the claimed governmental misconduct must be severe enough to qualify as nefarious or extreme government wrongdoing.

*Id.* at *22.

Plaintiff has not cleared even the lowest evidentiary bar here. There is no evidence in the record that would permit this Court to draw a conclusion that there was misconduct. Here, Mr. Stolley has admitted, and the agency has disclosed, email communications in which he explains that he will not communicate with Plaintiff outside of formal forum of the immigration court. There is no cover up of government misconduct that Plaintiff needs to bring to light through FOIA.

The record here certainly does not support an allegation of misconduct or crime in any event. Plaintiff attaches an email chain at Exhibit 3 [ECF No. 43-3] as supposed evidence. In that chain, Mr. Stolley reiterates that he does not communicate with the Plaintiff. However, he does forward emails on within ICE [ECF No. 43-3 at 1], and Plaintiff has produced no evidence, for example, in the context of this email, that Mr. Stolley or his office violated the immigration court's stay of removal order for their client. Emails further down the chain in this Exhibit show Mr. Stolley did, in fact, communicate with them concerning the provision of a medical procedure for a client in ICE custody.

8

Second Voss Decl., Ex. D; *see also* Pl's Ex. 5, ECF No. 43-5 at 71-73 (Mr. Stolley instructed another individual to allow Plaintiff's attorney to get the document he needed, but did not communicate directly with Plaintiff's attorney). Ultimately, Plaintiff decided to litigate the question in federal district court, and the issue was resolved.

The cases Plaintiff cites in support of its argument are procedurally distinct. In the cases Plaintiff cites there were evidentiary hearings and the party accused of the misconduct was before a Court with the authority to sanction the conduct. *E.g.*, *Cleveland Hair Clinic, Inc. v. Puig*, 968 F. Supp. 1227, 1241 (N.D. Ill. 1996) (imposing sanctions for violation of the Federal Rules of Civil Procedure in the course of litigation in front of the court). This Court is not here to determine the applicability of the Rules of Professional Conduct to Mr. Stolley or adjudicate whether his communication practice as to Plaintiff was improper, as Plaintiff has alleged.

In *Parrott v. Wilson*, 707 F.2d 1262, 1270-71 (11th Cir. 1983), for example, the Court held that the attorney work product protection was waived when an attorney clandestinely recorded a conversation between two witnesses. The Court found that the behavior – in the case in which the behavior occurred- was unprofessional and that the attorney would not be allowed to protect that information. There was a direct connection between the Court reviewing the protection and the underlying case, with the Court concluding that "Disclosure is clearly an appropriate remedy when the evidence sought was *generated* directly by the attorney's misconduct." *Id*. at 1271 n.20; *see also Cleveland Hair*, 968 F. Supp. at 1241 (waiver was a sanction for misconduct in the case before the court).

9

To request that this Court waive the privilege over a huge swath of attorney emails based upon the record here and in the context of FOIA is an end-run around a good faith adjudication of that question; one that certainly should allow Mr. Stolley to participate. FOIA is not a tool for Plaintiff to go on a fishing expedition into attorney emails and to create a shadow trial within this action.

Notably, Plaintiff has not even identified a particular rule that was broken.[3]  At times, Plaintiff refers to crimes, fraud, discrimination, unprofessionalism, and "bad faith litigation conduct."  ECF No. 42 at 34-35.  Plaintiff's accusations are certainly emphatic, but that is not a basis to credit them as true. Even if it were appropriate for the Court here to weigh into the merits of Plaintiff's accusations, Plaintiff has identified no facts to suggest that any client was prejudiced in any way.  And, of course, the appropriate place to raise those concerns would be in front of the judge hearing that particular matter and capable of reviewing the entire record.  In a similar case, which Plaintiff cites (ECF No. 42 at 34), then district court judge Brown Jackson explained, that without identifying an underlying crime, the exception could not apply, and the plaintiff's remedy in that case was not disclosure under FOIA, but an APA action to consider the propriety of the agency's actions. *Conservation Force v. Jewell, Sec'y of the Dep't of the Interior,* 66 F.Supp.3d 46, 64

---

[3] Plaintiff attempts to state that Mr. Stolley has committed a crime under 18 U.S.C. § 1001, which prohibits false statements to the United States government. ECF No. 42 at 24.  None of the facts he allege support that Mr. Stolley did that, however.  Plaintiff points to Mr. Stolley's communication policy, but that was never concealed or misstated.  Plaintiff does not identify any false statement by Mr. Stolley, and the circumstances here do not permit such an illogical inference to be made.

(D.D.C. 2014).

### b. The Crime-Fraud Exception Is Not Applicable.

Plaintiff's crime-fraud argument is difficult to understand.  Plaintiff argues that privileged protecting the content of an email from Mr. Stolley, which seeks advice from an AUSA who would represent the agency in a threatened mandamus action should be waived.  ECF 42 at 33-34; Vaughn Index at 704-709 (describing basis for the privilege). The underlying alleged misconduct is either Chief Counsel Stolley's refusal to pull and scan a page from Plaintiff's counsel's file as a courtesy to Plaintiff or the policy not to communicate informally.  Plaintiff does not tell the Court the basis for the obligation on Mr. Stolley to do either, what rule is allegedly violated, or whether, in fact, he received the passport page with or without litigation.

The Vaughn Index's description is sufficient for the Court to find Exemption 5 was properly applied in this instance.[4]  Plaintiff has not shown a crime, a fraud, misconduct, or any "nefarious" behavior to waive the privilege as to this email, and certainly not more broadly than the email at question.  *Austin Sanctuary Network*, 2022 WL 4356732, at *22.

---

[4] Plaintiff has not provided enough facts to require this Court to review all of the documents, rather than rely on the Vaughn Index.  This case is quite different from *Nat'l Immigration Project of Nat'l Lawyers Guild v. United States DHS*, No. No. 11–cv–3235 , 2014 WL 6850977, at *6 (S.D.N.Y. Dec. 3, 2014), in which the Plaintiff submitted dozens of examples in which there could have been misrepresentations made by the government. Plaintiff's Exhibit 5, again, shows that Mr. Stolley did not grant Plaintiff the privilege of informal communication, but, Plaintiff had other alternatives, through immigration court, and pursued them.  *E.g.*, Pl's Ex. 5, ECF No. In any event, Judge Rakoff made clear in that case that the crime-fraud exception only applies when there is evidence that the protected communications were in furtherance of a crime, and, like here, nothing the plaintiff presented alleged that there was an ongoing crime or fraud.

Yet, Plaintiff asks the Court to waive privilege to any and all communications with the US Attorney's Office based on this record. ECF No. 34-35. The Court must decline to do so.

IV. **Plaintiff's Substantive Objections to the Withholdings are Not Supported in the Record and Do Not Overcome the Agency's Preliminary Showing that the Redactions Are Proper.**

a. **Plaintiff's Objections to the Deliberative Process Redactions Should be Rejected.**

Plaintiff and the United States generally understand and agree on the standard this Court should employ with regard to the deliberative process privilege. Plaintiff's objections, however, do not overcome the agency's assertion of the privilege, however. The agency set forward in its Vaughn Index and Pineiro declarations that the deliberative process privilege was applied to pre-decisional, policy deliberations between attorneys and personnel within ICE. In addition, Plaintiff has shown no need to overcome the privilege through "a particularized need to outweigh the reasons for confidentiality." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993).

Plaintiff contends that the email on page 735 of ICE's production is not predecisional because it post-dates Mr. Stolley's communication policy and his communication of that policy with his subordinates. But, as described in the Vaughn Index, this is an email between Mr. Stolley and his supervisor regarding that communication policy that Mr. Stolley had theretofore followed and publicized to his subordinates. Vaughn Index at 729-737. Mr. Stolley's supervisor had not made any decision on the policy, and Mr. Stolley and that supervisor are entitled to a free and candid exchange on that issue. *See, e.g.*, *Protect Democracy Project, Inc. v. U.S. Dep't of Health & Hum.*

12

*Servs.*, 569 F. Supp. 3d 25, 37-44 (D.D.C. 2021) (reconsideration of prior final decisions can be deliberative); *Senate of P.R. v. DOJ*, 823 F.2d 574, 586 (D.C. Cir. 1987) (Judge Ginsburg held that the chain of command is an important factor for determining deliberative process privilege) (cited by Plaintiff, ECF No. 42 at 25). The United States did not withhold the fact of the prior policy. It is perfectly acceptable, and serves the goals of protecting policy decisions, for an attorney and his supervisor to discuss how to with an adversary law firm whose behavior the attorney considers uncivil. The email exchange is exempt from disclosure.[5]

As set forward in the First and Supplemental Pineiro Declaration, the Vaughn Index, and the agency's opening summary judgment brief, the deliberative process redactions the agency made were appropriate under the law. The agency conducted a line-by-line analysis to determine whether segregation of factual material could be done, and did so where it could. Pineiro Decl., ECF No. 37 at ¶ 52. This Court should grant summary judgment.

### b. Plaintiff's Objections to the Attorney Work Product Redactions Should be Rejected.

Again, many of Plaintiff's objections are presented through the veil of misconduct it alleges pervades everything. With regard to the emails at page 82 of the production, the United States properly asserted both the attorney work product doctrine and deliberative

---

[5] Though Plaintiff uses the term "discrimination" throughout its briefing and cites cases in which discriminatory practices were at issue, those situations are not comparable here. Pl's Opp. Memo., ECF No. 42 at 23. Different treatment is not discriminatory; Plaintiff has never identified a legal source of its assertion that it is entitled to engage in informal communications with ICE attorneys. In any event, cases from the employment context do not apply in FOIA, and the agency has disclosed many emails outlining the contours of Mr. Stolley's communication practices with Plaintiff.

process privilege.  The Vaughn Index describes this as a discussion between Mr. Stolley and an attorney he supervises, regarding "how to respond to a motion, as well as providing legal analysis of the case cited in the motion and providing an assessment of a possible outcome of the case and what the next steps in the litigation should be."  This is classic attorney opinion work product on litigation strategy in a pending case and is exempt.  *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977).  It also happens to be deliberative, in advance of the final decision to be taken in court.  *See* United States Opening Memo., ECF No. 35 at 11-14.

Plaintiff disputes the United States' withholding under Exemption 5 for attorney work product and deliberative process on page 424 of the production.  ECF No. 42 at 27.  The Vaughn Index for that assertion describes this email from a line attorney as providing, "a candid analysis to his superior regarding how ICE should respond to immigration counsel request for stipulation to removal in a pending litigation."  ECF No.37-1 at p. 424.  The entire exchange involves a decision by Plaintiff that its client agrees to be removed.  ECF No. 43-3 at 29-49.  An attorney at the Plaintiff firm conveys that to the immigration court and requests ICE stipulate.  Mr. Stolley does not respond to Plaintiff, but does respond to the immigration court to say that a response is not required.  ECF No. 43 at 29-49.  The immigration judge issued the removal order. ECF No. 43-5 at 68.  It is not fair to assume any misconduct from what's disclosed, given that Plaintiff could have chosen to file a motion with the court indicating the client's acquiescence to the removal, and what Plaintiff requested was, in fact, accomplished.

The documents for which work product protection was claimed are all related to pending or threatened litigation.  Plaintiff argues that the threat of litigation is not sufficient, but does not identify a particular redaction to which it objects on this ground. Opp. Memo., ECF No. 42 at 25.  The relevant facts (an individual contacted his attorney for advice after the threat of litigation by Plaintiff) are undisputed.  This case is certainly distinguishable from *Hennessey v. U.S. AID*, No. 97-1133, 1997 WL 537998 (4th Cir. Sept. 2, 1997) (rejecting work product protection for a document for which the stated purpose was to complete a construction project).  Here, by contrast, for example, Vaughn Index at 704-709, involves a threat by Plaintiff to file a lawsuit.  It is reasonable to seek advice regarding that contingency and the communication is both work product and attorney-client privileged.

### c. Attorney-Client Communication was properly asserted to protect only privileged conversations in which legal advice was sought.

Plaintiff puts forward several unsupported arguments of waiver to challenge the United States' assertion of attorney-client privilege for some redactions.   By contrast, Mr. Pineiro's declarations provides facts on which the Court can rely.  The United States is entitled to summary judgment as to the redactions for attorney-client communications.

For example, Plaintiff argues, without any support for it, that it is possible Mr. Stolley's emails to the St. Paul Chief Counsel's office list serve could have included some former employees who are no longer working for the agency. Mr. Pineiro explains that "ICE is a law enforcement agency with strict protocols in place in order to ensure that sensitive information is adequately protected. As soon as any ICE employee separates from

the agency, his or her email account is deactivated and they no longer have access to any of ICE's systems. The group inbox named "SPM Chief Counsel" consists of current employees of ICE's Office of Chief Counsel in St. Paul, MN." Supplemental Pineiro Decl. ¶ 7. There is simply no merit to Plaintiff's guess, and Plaintiff concedes that emails sent within ICE's chief counsel's office are protected. ECF No 42 at 29].

Plaintiff also asserts that it is possible Mr. Stolley sent privileged emails to a private email account. Plaintiff points to an email on bates page 593 of ICE's production. The Vaughn Index entry for that page indicates that that Exemption 6 and 7(c) were used to "redact the name, email addresses, and phone numbers of the ICE and DOJ attorneys, as well as the Courtroom Deputy for the United States District Court for the District of Minnesota." While we think it is clear from the context of the emails that Mr. Stolley was forwarding the email chain internally,[6] Mr. Pineiro's Supplemental Declaration also clarifies that the email address to which the email chain was forwarded is an ICE attorney. Supplemental Pineiro Decl. ¶ 10. Plaintiff is not entitled to discovery on this point, and there is no waiver of attorney client privilege. ICE did not assert privilege over emails unless they were solely between attorneys and clients. ECF No. 37, Pineiro Decl. ¶ 20.

Plaintiff also challenges the redactions on pages 474 and 480, stating that the description "appears disingenuous." ECF No. 42 at 30. That description, however, describes in detail that an ERO officer is seeking legal advice regarding the implementation

---

[6] The content of that email, "I am so so so so so done," should make clear that it is not to the Court. Mr. Stolley was not on the initial email exchanges with the Courtroom Deputy. Pl's Ex. 3, ECF No. 43-3 at 74.

of a court order.  How to ensure agency compliance with a court order is important legal advice, and the *Lee* case is not applicable or well-reasoned on that point.

The redaction on page 587 for attorney-client privilege, is, admittedly less detailed. But, the Vaughn Index describes an email communication between Mr. Stolley and the undersigned counsel for the United States in federal court.  That exchange concerned a case in active litigation.  The undersigned's email to Mr. Stolley contained a summary of a telephone call with plaintiff's counsel for that case.  The attorney's communication of that information is privileged, even if the Vaughn Index's description provides only the parties and the basic information.

On page 892 of the production, Plaintiff argues that the exemption 5 redaction is "suspect."  ECF No. 42 at 35.  Plaintiff misreads this communication entirely.  As the Vaughn Index describes, Mr. Stolley communicated with AUSAs who would represent the agency in potential litigation  Plaintiff's guess as to what the substance of the conversation might be does not overcome the stated facts in the Vaughn Index.  Plaintiff actually got what it requested from this interaction with Mr. Stolley.

The United States addressed other specific objections in its Opening Memorandum. Not surprisingly, there is a lot of attorney-client communication here, and Plaintiff has not shown any need to delve into those emails.  The United States is entitled to summary judgment.

### V.     The Agency is Entitled to Summary Judgment on its Exemption 3 Redactions.

The agency's approach to the Exemption 3 material is sound and should be adopted. Plaintiff challenges the agency's application of Exemption 3 and the proposed process for this Court's review.  As set forward in the Opening Memorandum, ECF No. 35, the United States believes that it is appropriate for this Court to review those pages *ex parte*.  Plaintiff appears to want the same thing, but opposes the United States' submission of an explanation to the Court as well.  The United States believes this is the most appropriate way to provide information to the Court while protecting the information required by statute.  The United States can identify the statute in that submission.[7]

The statute at issue in this case mandates nondisclosure and satisfies the threshold requirements of Exemption 3.  *Reporters Committee for Freedom of the Press v. DOJ*, 816 F.2d 730 (D.C. Cir. 1987).  As set forward in the Vaughn index and Pineiro Declaration, the documents at issue concern the material protected from disclosure under the statute. *E.g.*, Vaughn Index, ECF No. 37-1 at 116; Pineiro Decl., ECF 37, ¶ 20.  The United States

---

[7] DOJ's Office of Justice Programs has compiled a report outlining the number of times and the statutes under which United States' agencies have invoked Exemption 3.  The latest report is for FY 2021, and there are numerous statutes here that could be the basis of an Exemption 3 claim.  *See*  https://www.justice.gov/oip/page/file/1538501/download (last visited June 13, 2023); *see also* United States General Accountability Office, *Freedom of Information Act:  Update on Federal Agencies' Use of Exemption Statutes, available at* https://www.gao.gov/assets/gao-21-148.pdf (last visited June 13, 2023) (reporting on Exemption statutes used over the Course of FY 2010-19).  Courts have upheld Exemption 3 redactions in many different circumstances as well.  *E.g.*, *Fund for Const. Gov't v. NARA*, 656 F.2d 856, 867 (D.C. Cir. 1981) (concluding that Rule 6(e) of Federal Rules of Criminal Procedure, regulating disclosure of matters occurring before grand jury, satisfies Exemption 3's statute requirement because it was specially amended by Congress).

believes that a cautious path is the most appropriate course here, and in at least one circumstance, the District Court for the District of D.C. has employed a similar procedure. *Simpson v. Dep't of State*, No. 79-0674, 2 Gov't Disclosure Serv. (P-H) ¶ 81,280, at 81,798 (D.D.C. Apr. 30, 1981) (concluding that Exemption 3 authorized withholding of State Department's "Biographic Register" of federal employees, but declining to "discuss the [in camera] submission [of the Exemption 3 claim]" or identify Exemption 3 statute serving as basis for withholding, where "national security would be compromised and threats to the safety of individuals would arise upon specific discussion of the in camera submission"); *accord Haddam v. FBI*, No. 01-434, 2004 U.S. Dist. LEXIS 32911, at *36 (D.D.C. Sept. 8, 2004) (protecting twenty-three pages of documents described in agency's in camera affidavit pursuant to Exemption 3, but declining to name nondisclosure statute upon which agency relied where court determined that "no further information as to this exemption should be disclosed on the public record").  Once the Court makes an initial determination regarding the statutory basis and whether the documents fall within that statute's protection, the Court can determine whether there is any means to allow Plaintiff to provide a responsive argument[8], but the United States does not believe it is authorized at this point to disclose anything publicly.

In FOIA, once information is disclosed to an individual there is no means of protecting it via protective order.  *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004) ("There is no mechanism under FOIA for a protective order allowing only the

---

[8] All of these documents are emails received from attorneys at Plaintiff's firm and on its server.

requester to see whether the information bears out his theory, or for proscribing its general dissemination."). The United States respectfully requests that this Court review the documents *ex parte* and allow an *ex parte* submission that identifies the nondisclosure authority and United States' position as a starting point for the Court's analysis.

**VI.    The United States' redactions under Exemption 6 and 7(c) should be upheld on summary judgment.**

Despite identifying no compelling public interest in the specific identity of the individual names that are redacted, Plaintiff appears to argue against any invocation of Exemption 6 or 7(C). The United States justified its invocation of both exemptions, and is entitled to summary judgment.

As to Exemption 6, Plaintiff argues that these records are not similar files that are covered under the exemption. ECF No. 42 at 37-38. While conceding that 'some government employee emails constitute 'similar files,'" Plaintiff argues that these do not because of their content. The United States set forward the basis for its application of Exemption 6, and these documents are covered. Opening Memo., ECF No. 35 at 32-33. The United States has already fully debunked Plaintiff's theories of misconduct above, and Plaintiff does not cite any authority for the idea that the content of the emails changes their classification as covered files.

Plaintiff also argues that the United States did not meet the threshold Plaintiff argues that these records are not covered by Exemption 7(c) because they are not compiled for law enforcement purposes. The United States fully addressed this in its Opening Memorandum. ECF No. 35 at 28. The records in this case all concern how ICE enforces

immigration law. Plaintiff improperly attempts to parse those emails that are were not for a "law enforcement purpose." ECF No. 42 at 41. Exemption 7(C) does not require this. *Kuehnert v. FBI*, 620 F.2d 662, 666 (8th Cir. 1980).

Plaintiff acknowledges the privacy interest of non-attorney personnel at ICE and USAO personnel. ECF No. 39. The United States appreciates that concession. The privacy interests of ICE attorneys remains, however. Contrary to Plaintiff's suggestion, ICE does not routinely release to the general public its attorneys names and contact information. Those names are, of course, available to members of the bar practicing before the immigration, as Plaintiff's Exhibit suggests. But, under FOIA, release to one party is release to all. There is no limitation that the United States can put on dissemination. Broader availability outside of the immigration bar implicates the policy concerns described in Mr. Pineiro's declaration.[9] In the context of law enforcement, even a *de minimis* interest requires protection of the names of line counsel.

Plaintiff has not stated a serious public interest that would outweigh the privacy interest of the individual ICE attorneys. In the context of Exemptions 6 and 7(C), Plaintiff must identify a "significant" public interest, and show that the information sought will advance that interest. *NARA v. Favish*, 541 U.S. 157, 172 (2004). Plaintiff incorporates portions of its FOIA request as support for their public interest claim. Largely, Plaintiff

---

[9] Plaintiff takes issue with the Pineiro declaration's reliance on OPM's designation of ICE as a security sensitive agency. Copies of that document are available on the internet, and the point is simply to highlight another reason why ICE personal are uniquely situated in terms of privacy and security interests. The United States Office of Personnel Management has designated ICE as a security sensitive agency. Second Voss Decl., Ex. D.

argues that the public has a right to know about Mr. Stolley's communication policy towards Plaintiff. FOIA Request, ECF No. 27-1 at 6-7. Of course, this is public, and ICE's production provided many emails confirming the practice.[10]

Plaintiff has never shown that there was any prejudice to a client by Mr. Stolley's communication policy that would make this policy shed light on the performance of the government's duties. The records reflect that when it was necessary, Mr. Stolley acted on Plaintiff's informal email requests and despite the fact he does not communicate with the law firm directly, he does take necessary and appropriate action in the immigration cases where Contreras is the representing law firm. *E.g.*, Pl's Ex. 3, ECF No. 43-3 at 1; Pl's Ex. 5, ECF No. 43-5 at 71-73. There is no evidence in the record to suggest Plaintiff's clients have suffered, and, if they did, they have a remedy with the Court handling their case.

Finally, Plaintiff argues that the email addresses of its employees must be disclosed, even without releases of that information, because the employee handbook provides that the emails are property of the firm. These emails, however, are not from Plaintiff's servers. They are from the server of ICE and Mr. Stolley's account. FOIA applies, and the employee handbook cannot supersede that. It would be impossible for the United States to know, or be subject to, the myriad of arrangements that an employer might have with its

---

[10] In the FOIA request, Plaintiff spends some time conceding that this may look like it is seeking the information for its own commercial interest. FOIA Request, ECF No. 27-1 at 7 ¶ 8. It certainly does. To the extent Plaintiff is seeking the information to enhance its reputation and attract clients, that is a private interest, and does not overcome the privacy interests in FOIA.

employees.  Plaintiff can certainly look for copies of these emails on its own server, but in this context, a release is required to get them from the United States.

## **CONCLUSION**

For the foregoing reasons, and all those set forward in the United States Opening Memorandum, ECF No. 35, the United States respectfully requests that this Court grant its motion for summary judgment and deny Plaintiff's motion.


Dated:  June 13, 2023

Respectfully submitted,                                         ANDREW M. LUGER
                                                                                United States Attorney

                                                                                *s/  Ana H. Voss*
                                                                                BY:  ANA H. VOSS
                                                                                Assistant U.S. Attorney
                                                                                Attorney ID No.  483656DC
                                                                                600 United States Courthouse
                                                                                300 South Fourth Street
                                                                                Minneapolis, MN 55415
                                                                                Phone:  612-664-5600
                                                                                Email: Ana.Voss@usdoj.gov