## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

CONTRERAS & METELSKA, P.A.

Civil No. 21-1148 (JRT/JFD)

Plaintiff,

v.

UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT, & UNITED
STATES DEPARTMENT OF HOMELAND
SECURITY,

**MEMORANDUM OPINION AND ORDER
ON CROSS MOTIONS FOR SUMMARY
JUDGMENT**

Defendant.

Nicholas Ratkowski, **RATKOWSKI LAW PLLC**, 332 Minnesota Street, Suite W1610, St. Paul, MN 55101, for Plaintiff.

Ana H. Voss, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Defendants.

Plaintiff Contreras & Metelska, P.A. ("Contreras") sought information from U.S. Immigration and Customs Enforcement ("ICE") through a Freedom of Information Act ("FOIA") request. When ICE failed to timely respond, Contreras filed a complaint against ICE and its supervising agency the U.S. Department of Homeland Security ("DHS") to compel disclosure. After receiving the documents, Contreras challenged many of the redactions. The parties filed Cross-Motions for Summary Judgment. Because the Court finds that ICE has fully discharged its duties under FOIA, the Court will grant ICE and DHS's Motion for Summary Judgment and deny Contreras's Motion for Summary Judgment.

## BACKGROUND

### I.    FACTS

Plaintiff Contreras & Metelska, P.A. is an immigration law firm providing legal assistance to noncitizens.  (Am. Compl. ¶6, Dec. 29, 2022, Docket No. 27.)  ICE is a subset of DHS and DHS's principal investigative branch.  (Pineiro Decl. ¶12, Apr. 25, 2023, Docket No. 37.)  ICE's Office of the Principal Legal Advisor ("OPLA") is the largest legal program within DHS and has 25 field locations, called Offices of Chief Counsel ("OCC").  (Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Mem.") at 3, Apr. 25, 2023, Docket No. 36.)  Jim Stolley is the managing attorney, or Chief Counsel, of ICE OCC in St. Paul, Minnesota and the subject of the FOIA request.  (*Id.*)

On March 22, 2021, Contreras filed a FOIA request with ICE OPLA that requested Stolley's emails from January 1, 2016 until the filing date of the FOIA request.  (Pl.'s Mem. Supp. Cross Mot. Summ. J ("Pl.'s Mem.") at 1, May 22, 2023, Docket No. 42.; Am. Compl., Ex. 1 ("FOIA Req.") at 2, Dec. 29, 2022, Docket No. 27-1.)  Contreras filed the FOIA request seeking information about alleged discriminatory conduct in Stolley's "no contact" policy with Contreras and its employees.  (FOIA Req. at 6–9.)

ICE failed to comply with the request within the statutorily required 20 days, so Contreras filed the current action on May 4, 2021.  5 U.S.C. § 552(a)(6)(A)(i); (Am. Compl. ¶16.; Pl.'s Mem. at 1.)  Filing of the action started negotiations between the parties and they were able to define the scope of the search and terms to be used.  (Defs.' Mem. at 5.)

Ultimately, ICE disclosed a total of 2,436 pages from Stolley's email in seven installments between October 2021 and July 2022 with significant redactions. (*Id.*) ICE redacted information in its disclosures pursuant to four exemptions: 5 U.S.C. §§ 552(b)(3), (b)(5), (b)(6), and (b)(7)(C). (*Id.* at 6.) Contreras challenged redactions under all the listed exemptions. (*See* Am. Compl. ¶¶ 33–35.)

ICE prepared a detailed Vaughn Index totaling 226 pages that explains the precise exemption that applied to the redacted information. (Pineiro Decl., Ex. 1 ("Vaughn Index"), Apr. 25, 2023, Docket No. 37-1.) The Vaughn Index was supplemented by two declarations from Fernando Pineiro, the FOIA director of ICE. (Pineiro Decl.; Suppl. Decl. Fernando Pineiro ("Pineiro Suppl. Decl."), June 13, 2023, Docket No. 47.)

In response to Contreras's challenge, ICE released an additional 52 previously redacted documents but claimed new redactions under Exemption 3. (Pl.'s Mem. at 2.) Contreras maintains many of its challenges. (*See id.*)

## II.  PROCEDURAL HISTORY

Plaintiff Contreras filed its initial complaint under FOIA, 5 U.S.C § 552, on May 4, 2021, seeking compliance with its March 22, 2021 FOIA request to ICE. (*See* Compl., Docket No. 1.) ICE and DHS answered the complaint on June 4, 2021, but also engaged in negotiations with Contreras. (*See* Answer, Docket No. 6.)

After the disclosure of 2,436 pages, Contreras filed an Amended Complaint acknowledging the disclosure but alleging additional unlawful redactions. (*See* Am.

Compl.)   ICE and DHS filed an Answer to the Amended Complaint and continued negotiations with Contreras.  (*See* Answer Am. Compl., Docket No. 28.)

Both parties have moved for summary judgment.  ICE and DHS claim that they have exhausted all their duties under the statute.   In its Cross Motion for Summary Judgment, Contreras requests an in camera review of the remaining contested documents.  The Court conducted an in camera review of selected documents.  (Order Granting In Camera Rev., Oct. 6, 2023, Docket No. 60.)

## DISCUSSION

### I.    STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co., LTD. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial.  *Anderson*, 477 U.S. at 248 (discussing Fed. R. Civ. P. 56(e)).  "The mere existence of a scintilla of evidence in support of the plaintiff's

position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

In a FOIA case, "[s]ummary judgment is available to the defendant … when the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Miller v. U.S. Dep't of Agric.*, 13 F.3d 260, 262 (8th Cir. 1993) (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985)).

## II.   ANALYSIS

When a plaintiff claims that an agency improperly withheld records in response to a FOIA request, the burden is on the agency to sustain the applied exemptions.  5 U.S.C. § 552(a)(4)(B); *see also U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989).  The Court must, however, accord substantial weight to the agency's affidavit about its determination concerning the application of § 552(b) exemptions.  *See* 5 U.S.C. § 552(a)(4)(B).   Boilerplate or conclusory affidavits, standing alone, are insufficient to show that no genuine issue of fact exists as to the applicability of a FOIA exemption.  *Miller v. U.S. Dep't of Agric.*, 13 F.3d at 263.  On the other hand, courts recognize that "[u]ncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail."  *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (citation omitted).  The Court's role in evaluating FOIA exemptions is to,

> [R]eview the adequacy of the affidavits and other evidence presented by the Government in support of its position * * *.  If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position.  The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency.

*Barney v. Internal Revenue Serv.*, 618 F.2d 1268, 1272 (8th Cir. 1980) (quoting *Cox v. Dep't of Just.*, 576 F.2d 1302, 1311 (8th Cir. 1978)).  If an agency establishes an exemption, "it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested records."  *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1167 (D.C. Cir. 2011) (citation omitted).

### A.    Adequacy of Exemption Descriptions

Agencies support redactions through affidavits and declarations describing the redactions and the processes.  One type of affidavit that can establish the application of an exemption is a "Vaughn Index," which provides a factual description of each document sought, including a general description of the contents; date, time, and place of creation; any exemption claimed by the government; and an explanation as to why the exemption applies.  *Missouri Coal. for Env't Found. v. U.S. Army Corps of Eng'rs*, 542 F.3d 1204, 1209–10 (8th Cir. 2008).  To satisfy the burden of establishing an exemption through a Vaughn Index, "[t]he agency's justification must be relatively detailed, correlating specific parts of the requested documents with the basis for the applicable exemption."  *Id.* at 1212.  Agencies also support redactions through employee declarations explaining why

exemptions apply and what information is redacted. *Parton v. U.S. Dep't of Just.*, 727 F.2d 774, 776 (8th Cir. 1984); *Barney*, 618 F.2d at 1272–74. Employee declarations explaining exemptions are only given deference if they are relatively detailed, nonconclusory, and there is no reason to question the good faith of the agency. *Barney*, 618 F.2d at 1272; *Mace v. E.E.O.C*, 197 F.3d 329, 330 (8th Cir. 1999) (citation omitted).

Courts have differed with respect to what constitutes "bad faith" for challenging FOIA exemptions. Some courts require that the bad faith be present in the actual processing of the FOIA search. *Budik v. Dep't of the Army*, 742 F. Supp. 2d 20, 32 (D.D.C. Sept. 30, 2010). Other courts find that if the agency is engaging in bad faith conduct separate from the search, that could be sufficient to conduct an in camera review of the disputed documents. *Jones v. F.B.I.*, 41 F.3d 238, 243 (6th Cir. 1994) (citing *Ingle v. U.S. Dep't of Just.*, 698 F.2d 259, 267 (6th Cir. 1983) (holding that if the subject of the FOIA request could result in disclosure of documents that would "publicly embarrass the agency" or operate as a "cover up" then government affidavits should be given less credibility)). There is a distinction between bad faith and simple error as bad faith requires a "deliberative state of mind." *Nielsen v. U.S. Bureau of Land Mgmt.*, 252 F.R.D. 499, 526–27 (D. Minn. 2008).

Here, there is little to suggest that the FOIA search was conducted in bad faith. Throughout the negotiations, ICE continued to reevaluate the redactions and disclose additional information as needed. No documents were withheld in full; each document

was reviewed line by line to segregate any nonexempted material.  The Vaughn Index explained in detail why redactions were made, and the Pineiro declarations further explained the process.

There are two specific acts of misconduct alleged to be bad faith such that in camera review would be warranted: the statements in Pineiro's supplement declaration and Stolley's alleged discriminatory policy towards Contreras.  Neither require further review of the redactions.

Pineiro's statements in his supplemental declaration do not rise to bad faith conduct.  ICE turned over some documents later in litigation that were originally claimed under attorney-client privilege.  Upon disclosure of those documents, it became clear that attorney-client privilege did not and should not have applied.  Even after disclosure, Pineiro maintained that the redacted information was properly withheld.  While Pineiro may have been wrong, that alone is not bad faith conduct.  *Moffat v. U.S. Dep't of Just.*, 716 F.3d 244, 255 (1st Cir. 2013) ("[E]ven if the agency claimed an exemption in error, that fact alone does not establish that the government's response lacked good faith.")  Contreras presented nothing more than accusations of bad faith without specific facts suggesting that Pineiro had a "deliberative state of mind."  *Nielsen*, 252 F.R.D. at 526–27.  Even Contreras stated that Pineiro is "mistaken" in his belief that these documents could have been withheld.  (Pl.'s Reply Mem. Re. Cross Mots. Summ. J. at 5, Docket No. 51.)  When the Court reviewed selected documents in camera, it found no additional improper

withholdings.  As such, the Court will find that the Pineiro declarations were submitted in good faith and that no further review of redacted documents is necessary.

Stolley's workplace conduct likewise does not rise to the level of bad faith.  The Eighth Circuit has not yet clearly determined what constitutes bad faith, but even the broadest standard fails to encompass Stolley's behavior.  *Peltier v. F.B.I.*, 563 F.3d 754, 760–61 (8th Cir. 2009) (discussing *Jones*, 41 F.3d 238).  The Sixth Circuit has held that bad faith conduct outside the FOIA process can be sufficient to grant in camera review of the documents if it operates as a "cover up" or is likely to "publicly embarrass the agency" if disclosed.  *Jones*, 41 F.3d at 243.  While the documents may not paint ICE in the most flattering light, Stolley's no contact policy towards Contreras was widely known and thus disclosure of additional information surrounding this policy is unlikely to greatly impact ICE or operate as a cover up.  As such, the Court will find that Stolley's conduct, while problematic, does not justify additional review of the redacted documents.

Finally, after reviewing documents in camera that seemed to be lacking adequate explanation, the Court found no evidence of improper withholding.  The documents were redacted as explained in the Vaughn Index and Pineiro's declarations.  ICE also properly withheld the statute under which it redacted documents pursuant to Exemption 3.  Public disclosure of the statute would in fact undermine the information it aimed to keep confidential.  Ultimately, the Court finds no reason to further review the redactions performed by ICE, concluding that ICE fully discharged it duties under FOIA.

**CONCLUSION**

An agency's explanation for redactions is to be taken in good faith unless the plaintiff presents evidence to the contrary.  In evaluating the Vaughn Index, Pineiro declarations, Stolley's workplace conduct, and specific documents reviewed in camera, the Court does not find sufficient evidence to overcome that presumption of good faith. Because the Vaughn Index and Pineiro declarations are credible and adequate, ICE has fully discharged its duties under FOIA.  The Court will grant ICE and DHS's Motion for Summary Judgment and deny Contreras's Motion for Summary Judgment.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1.  Defendants' Motion for Summary Judgment [Docket No. 34] is **GRANTED**.

2.  Plaintiff's Motion for Summary Judgment [Docket No. 39] is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  November 6, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge